**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| United States of America ex rel. ) | |
| KENNETH CEBERTOWICZ, ) | |
| ) | |
| Petitioner, ) | |
| ) | CASE NO. 00 C 7289 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| BRADLEY J. ROBERT, Warden ) | |
| Centralia Correctional Center, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Kenneth Cebertowicz ("Petitioner" or "Cebertowicz"), an Illinois state

prisoner, has filed a *pro se* writ of habeas corpus [1, 11][1] pursuant to 28 U.S.C. § 2254 claiming

that he is being held in custody in violation of the Constitution of the United States.[2] The

petition has been fully briefed. For the following reasons, the petition is denied.

**I.    Background**

**A.    Factual Background**

District Court review of a habeas petition presumes all factual findings of the state court

to be correct, absent clear and convincing evidence to the contrary. See 28 U.S.C. § 2254(e)(1);

*Daniels v. Knight*, 476 F.3d 426, 434 (7th Cir. 2007). The petitioner has failed to provide such

---

[1] Petitioner's initial petition [1] was dismissed for failure to exhaust state remedies [8]. Upon exhaustion, Cebertowicz's petition was reinstated [11].

[2] When Petitioner filed his habeas petition, he named James Chrans as Respondent, since Chrans was the Warden at the Western Illinois Correctional Center at the time of filing. Petitioner has since been moved to Centralia Correctional Center, where Bradley J. Robert currently is the Warden. In accordance with Rule 2 of the Rules Governing Section 2254 Cases, Warden Robert is the proper "state officer having custody of the applicant," and thus is substituted as the named respondent in this case. See *Bridges v. Chambers*, 425 F.3d 1048, 1049-50 (7th Cir. 2005); *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (citing *Hogan v. Hanks*, 92 F.3d 189, 190 (7th Cir. 1996)).

evidence, and thus the Court largely adopts the following account from the Illinois Appellate Court's Rule 23 Order on direct appeal in *People v. Cebertowicz*, No. 3-95-0124 (Ill. App. Ct. 1997) and the Circuit Court of Will County's Order granting the State's motion to dismiss the second amended post-conviction petition. See Ex. D to Ans; Ex. U to Ans.[3]

Following a jury trial, Cebertowicz was convicted of first degree murder and aggravated discharge of a firearm based on the shooting death of his wife, Victoria Cebertowicz ("Vicki"). Rule 23 order, Ex. D to Ans., at 1. He was sentenced to imprisonment for consecutive terms of fifty years and four years, respectively. *Id*. This sentence was later modified on appeal to run concurrently. Appellate Court Order, *People v. Cebertowicz*, No. 3-98-0776, Ex. N to Ans., at 2.

The shooting took place during the early morning hours of December 14, 1993. Ex. D at 2. Cebertowicz testified that he was at home that night, waiting for his wife to return from a job interview at the Dollhouse. *Id*. Vicki had recently been fired from her position as a dancer at Heavenly Bodies for alleged prostitution. *Id*. Though she denied the allegation, Cebertowicz suspected that it might be true. *Id*. Approximately a week prior to the shooting he began taping her phone conversations. *Id*. That evening, while his wife was out of the house, Cebertowicz searched through her duffel bag, where he found condoms and sexually explicit photographs. *Id*. He testified that he became enraged because he and his wife did not use condoms since she had undergone a tubal ligation. *Id*. When Vicki returned home, Cebertowicz asked her if she was a prostitute and she again denied the allegation. *Id*. Cebertowicz then led her into the bedroom, where he confronted her with the condoms and photographs he had found. *Id*. At that point, Vicki admitted to being a prostitute. *Id*.

---

[3]The Court will refer to the state court materials that accompanied Respondent's Answer (as required by Rule 5(d) Governing Section 2254 Habeas Cases) by their exhibit designation.

Cebertowicz and Vicki returned to the living room and continued arguing. Ex. D at 3. Cebertowicz was sitting in a chair with his gun lying on a table next to him. *Id*. He testified that Vicki stated that she might as well commit suicide, and that he agreed. *Id*. He threw Vicki some paper and instructed her to write a suicide note. *Id*. Unsatisfied with the first draft, he made her write another. *Id*. Cebertowicz testified that at this point the argument had continued for a half hour to an hour, and that he had grown tired of it. *Id*. He picked up his gun and started to go to bed. *Id*. He then called Vicki a "whore," and she kicked him in the groin. *Id*. Cebertowicz testified that he "tensed up" in response to the kick, and that the gun went off and a bullet struck a picture on the wall. *Id*. At this point Vicki was on her knees in front of Cebertowicz. *Id*. He then struck her in the head with the muzzle of the gun, and a bullet discharged and lodged in her head. *Id*.

Immediately after the shooting, Cebertowicz removed the clip from the gun and a bullet from the chamber and placed the gun on the floor in a "locked-back" position. Ex. D at 3. He attempted to stop Vicki's bleeding by placing his hand on her wound, but was unsuccessful. *Id*. at 4. He picked up the suicide notes she had written and put them in his gun case, and put the case in the bedroom. *Id*. Cebertowicz then called 911. *Id*. Afterwards, he went to the garage to find an EMT kit. *Id*. In the search process he dripped blood on several ammunition cans that were located in the garage. *Id*. Unable to locate the EMT kit in the garage, he went outside to get one from his car. *Id*. At this point, the police arrived. *Id*. An officer accompanied him back inside the house, and Cebertowicz placed a compression bandage on Vicki's wound. *Id*. Cebertowicz was then placed under arrest for his wife's shooting. *Id*.

**B.     Procedural Background**

Following his conviction by a jury in the Circuit Court of Will County, Cebertowicz filed a timely appeal claiming: (1) the trial court erred in refusing to tender a second degree murder instruction to the jury; (2) the State failed to prove beyond a reasonable doubt that he committed the offense of aggravated discharge of a firearm; (3) the trial court erred in admitting into evidence the contents of certain ammunition cans found in the garage; (4) he was denied the right to a fair trial when the prosecutor called him a "freaking animal" during the opening statement; and (5) his fifty year sentence for first degree murder is excessive.  Petitioner's Brief on Appeal, Ex. A to Ans.  The Illinois Appellate Court, Third District, affirmed his conviction on May 2, 1997.  Ex. D to Ans.

Thereafter, Cebertowicz filed a petition for leave to appeal ("PLA") to the Illinois Supreme Court. PLA, Ex. E to Ans.  In his PLA, he raised one issue: whether the appellate court erred in refusing his request to reverse the trial court's decision not to tender a jury instruction on second degree murder.   The Illinois Supreme Court denied the PLA on October 1, 1997.  Denial of PLA, Ex. F to Ans.

On January 20, 1998, Cebertowicz filed a first post-conviction petition through his appellate attorney, Thomas Moore.  Post-conviction petition, Ex. G to Ans.  The petition asserted that trial counsel was ineffective for failing to present mitigation witnesses at sentencing, and for failing to inform Cebertowicz of the possibility of consecutive sentences for his two convictions. *Id*.  On July 15, 1998 the Circuit Court of Will County dismissed the post-conviction petition without an evidentiary hearing following the State's motion.  Order dismissing post-conviction petition, Ex. J to Ans.

Cebertowicz then appealed to the Illinois Appellate Court, Third District, claiming that: (1) his consecutive sentences should be modified to run concurrently; and (2) that the trial court erred in dismissing the defendant's post-conviction petition without an evidentiary hearing. Petitioner's brief on appeal, Ex. K to Ans. On May 24, 2000, the appellate court affirmed the circuit court's dismissal of the post-conviction petition, but modified the sentences to run concurrently. Appellate court order, Ex. N to Ans., at 2.

On June 28, 2000, Cebertowicz filed a PLA to the Illinois Supreme Court claiming that the appellate court erred when it affirmed the trial court's dismissal of his post-conviction petition without an evidentiary hearing. Petitioner's PLA, Ex. O to Ans. at 4. The Illinois Supreme Court denied the PLA on October 4, 2000. Order denying PLA, Ex. P to Ans.

On November 6, 2000 Cebertowicz filed a *pro se* second post-conviction petition in the Circuit Court of Will County in which he presented eleven claims: (1) he was denied the effective assistance of trial and appellate counsel and subjected to double jeopardy when the trial court imposed consecutive sentences; (2) he was denied the effective assistance of trial and appellate counsel and subjected to double jeopardy when the trial court failed to vacate one of the two murder convictions; (3) he was denied the effective assistance of trial and appellate counsel and due process of law because the Illinois second degree murder statute is unconstitutionally vague; (4) he was denied the effective assistance of trial and appellate counsel when trial counsel failed to provide a recognized defense under the law, and appellate counsel failed to raise this issue on direct appeal; (5) he was denied the effective assistance of trial and appellate counsel where trial counsel failed to discuss the desirability of accepting the State's thirty year plea offer and gave petitioner erroneous advice, and appellate counsel failed to raise the issue on direct appeal; (6) he was denied the effective assistance of trial and appellate counsel

where the trial court failed to suppress his pre-trial statements, and appellate counsel failed to raise the issue on petitioner's direct appeal; (7) he was denied the effective assistance of trial and appellate counsel where the prosecutor engaged in misconduct by showing a picture to the jury that was prejudicial and not entered into evidence; (8) he was denied the effective assistance of trial and appellate counsel when trial and appellate failed to raise the constitutionality of the first degree murder statue as confusing or vague with respect to sentencing; (9) he was denied the effective assistance of trial and appellate counsel where evidence was relied upon during petitioner's sentencing hearing that was not charged in his indictment or proved beyond a reasonable doubt and neither trial nor appellate counsel raised the issue; (10) he was denied the effective assistance of trial and appellate counsel because of the cumulative effects of the errors; (11) he was denied the effective assistance of appellate counsel where appellate counsel advised him to only raise one issue in his PLA to the Illinois Supreme Court. *Pro se* seconded post-conviction petition, Ex. Q to Ans., at 1-15. The circuit court appointed Cebertowicz counsel, who then filed an amended second post-conviction petition raising the same eleven issues in the *pro se* petition on May 8, 2001. Amended second post-conviction petition, Ex. R to Ans. Following a hearing involving testimony from both Cebertowicz and his trial counsel, Joseph Polito (Transcript of hearing on second amended post-conviction petition, Ex. T to Ans.), the circuit court granted the State's motion (Motion to dismiss second amended post-conviction petition, Ex. S to Ans.) to dismiss the petition. Order granting State's motion to dismiss second amended post-conviction petition, Ex. U to Ans. The circuit court denied Cebertowicz's petition for rehearing on January 13, 2004. Order denying motion to reconsider State's motion to dismiss second amended post-conviction petition, Ex. V to Ans.

Cebertowicz filed a *pro se* habeas corpus petition in United States District Court while his state actions were still proceeding. On March 1, 2001, the district court summarily dismissed the petition without prejudice for failure to exhaust state remedies and with leave to reinstate within 60 days after termination of the state court proceedings.

Cebertowicz appealed the Circuit Court of Will County's dismissal of his amended second post-conviction petition and the Office of the State Appellate Defender filed a motion to withdraw as counsel pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987). Motion to withdraw as counsel, Ex. W to Ans. The Illinois Appellate Court granted the motion and affirmed the decision of the Circuit Court. Order granting motion to withdraw and affirming case, Ex. X to Ans. Cebertowicz then filed a third PLA to the Illinois Supreme Court raising the same eleven issues from the second amended post-conviction petition. Petitioner's PLA, Exhibit Y to Ans. The Illinois Supreme Court denied petitioner's PLA on December 1, 2005. Order denying PLA, Exhibit Z to Ans.

On December 29, 2005, Cebertowicz filed a motion to reinstate his federal habeas petition, which was granted on January 10, 2006.[4] This present petition claims that: (1) the trial court erred when it refused to render jury instructions on second degree murder; (2) the evidence was insufficient to support the charge of aggravated discharge of a firearm; (3) the admission of ammunition cans into evidence was error; (4) the prosecutor committed error when he referred to petitioner as a "freaking animal" in his opening statement; (5) he was denied the effective assistance of trial and appellate counsel and he was subjected to double jeopardy when the trial court imposed consecutive sentences; (6) he was denied the effective assistance of trial and appellate counsel and was subjected to double jeopardy when the trial court failed to vacate one

---

[4] Cebertowicz's petition was transferred to this Court by Executive Order as part of the Court's initial calendar on December 6, 2007.

of his two murder convictions; (7) he was denied the effective assistance of trial and appellate counsel where the Illinois second degree murder statute is unconstitutionally vague; (8) he was denied the effective assistance of trial and appellate counsel where trial counsel failed to provide a recognized defense, and appellate counsel failed to raise the issue on direct appeal; (9) he was denied the effective assistance of trial and appellate counsel where trial counsel failed to discuss the desirability of accepting the State's thirty year plea offer and gave him erroneous advice, and appellate counsel failed to raise the issue on direct appeal; (10) he was denied the effective assistance of trial and appellate counsel where the trial court failed to suppress his pre-trial statement, and appellate counsel failed to raise the issue on direct appeal; (11) he was denied the effective assistance of trial and appellate counsel where the prosecutor engaged in misconduct by showing a prejudicial picture to the jury, and appellate counsel did not raise the issue on direct appeal; (12) he was denied the effective assistance of trial and appellate counsel and due process of law when trial and appellate counsel failed to raise the constitutionality of the first degree murder statue as confusing and vague; (13) he was denied the effective assistance of trial and appellate counsel where evidence was relied upon during his sentencing hearing that was not charged in the indictment or proved beyond a reasonable doubt and both trial and appellate counsel failed to raise the issue; (14) he was denied the effective assistance of trial and appellate counsel due to the cumulative effect of these errors; (15) he was denied the effective assistance of trial and appellate counsel when counsel told him to raise only one issue in his PLA from his direct appeal, thus barring him from raising those issues in federal court.

The State filed an answer to petitioner's complaint on February 15, 2006 [14]. Cebertowicz filed a first traverse (which the court takes as a response) to the answer on April 4, 2006 [16] and a second traverse to the answer on May 17, 2007 [24].

## II.     Standard of Review

### A.     Federal Habeas Relief for State Prisoners

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas petition cannot be granted unless the decision of the state court "was contrary to, or involved an unreasonable application of clearly established Federal law," or "was based on an unreasonable determination of the facts."  28 U.S.C. § 2254(d)(1-2).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law; [or] if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the United States Supreme Court]."  *Williams v. Taylor*, 529 U.S. 362, 405 (2000).  "Avoiding these pitfalls does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early v. Packer*, 537 U.S. 3, 8 (2002).

A state court's decision constitutes an "unreasonable application" of clearly established federal law if the state court identified the correct legal rule but unreasonably applied the controlling law to the facts of the case.  *Williams*, 529 U.S. at 407.  It should be noted that "an unreasonable application of federal law is different from an *incorrect* application of federal law."  *Id.* at 410.  Rather, "unreasonable" means that a state court's decision lies "well outside the boundaries of permissible differences of opinion."  *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002).

### B. The Exhaustion Doctrine and Procedural Default

Prior to filing a habeas petition in federal court, a petitioner must have "fully and fairly presented his claims to the state appellate courts, thus giving the state courts a meaningful opportunity to consider the substance of the claims that he later presents in his federal challenge." *Bintz v. Bertrand*, 403 F.3d 859, 863 (7th Cir. 2005); see also *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). This exhaustion requirement "serves an interest in federal-state comity by giving state courts the first opportunity to address and correct potential violations of a prisoner's federal rights." *Perruquet v. Briley*, 390 F.3d 505, 513 (7th Cir. 2004) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1972)). It requires the petitioner to assert each of his federal claims through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceedings, before proceeding to federal court. See *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). This includes presentation of the claims to appellate courts where review is discretionary when that review is part of the ordinary appellate procedure in the state. *O'Sullivan*, 526 U.S. at 847 (holding that the petitioner in question was required to fully and fairly present his claims to the Illinois Supreme Court in a petition for leave to file an appeal even though that court's review both of direct appeals and post-conviction petitions is discretionary).

To fairly present a claim in state court, the petitioner must include both the operative facts and the controlling legal principles on which the claim is based, and also must alert the state court that the claim raised is based on federal law. *Chambers v. McNaughtry*, 264 F.3d 732, 737 (7th Cir. 2001); *Sweeney v. Carter*, 361 F.3d 327, 332 (7th Cir. 2004). If the federal court reviewing the habeas petition is not satisfied that the petitioner gave the state courts "a meaningful opportunity to pass upon the substance of the claims [] presented in federal court,"

the Court cannot reach the merits.  *Chambers*, 264 F.3d at 737-738; see also *Sweeney*, 361 F.3d at 332.

"Where state remedies remain available to a habeas petitioner who has not fairly presented his constitutional claim(s) to the state courts, the exhaustion doctrine precludes a federal court from granting him relief on that claim:  although a federal court now has the option of denying the claim on its merits, 28 U.S.C. § 2254(d)(2), it must otherwise dismiss his habeas petition without prejudice so that the petitioner may return to state court in order to litigate the claim(s)."  *Perruquet*, 390 F.3d at 514 (citing *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Rose v. Lundy*, 455 U.S. 509, 522 (1982)); see also 28 U.S.C. § 2254(b)(1)(A); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Dressler v. McCaughtry*, 238 F.3d 908, 912 (7th Cir. 2001). However, where a petitioner has already pursued state court remedies and there is no longer any state corrective process available to him or her, "it is not the exhaustion doctrine that stands in the path of habeas relief, see 28 U.S.C. § 2254(b)(1)(B)(i), but rather the separate but related doctrine of procedural default."  *Perruquet*, 390 F.3d at 514.

However, if an opportunity remains for the petitioner to return to state court to exhaust his or her unexhausted claims, the petitioner has not yet procedurally defaulted those claims and the Court must consider whether to dismiss the petition without prejudice or, if appropriate, stay the case.  See *Rose v. Lundy*, 455 U.S. 509 (1982); *Dolis v. Chambers*, 454 F.3d 721, 724 (7th Cir. 2006).   Generally a federal district court may not adjudicate a mixed habeas petition.  See U.S.C. § 2254(b)(1)(A); *Rose,* 455 U.S. at 518-19.   Under the total exhaustion requirement, federal district courts are required to dismiss a mixed petition without prejudice to allow petitioners to pursue exhaustion of their claims.  *Lundy*, 455 U.S. at 522.  The petitioner then has the option of returning to state court to exhaust his or her claims or resubmitting his or her

habeas petition presenting only the exhausted claims. *Id.* at 510. Although dismissal without prejudice is the typical response to a mixed petition filed prior to exhausting the available state remedies, the Court may, in the interest of comity or judicial economy, deny a habeas petition on the merits. See 28 U.S.C. § 2254(b)(2); see also *Granberry v. Greer*, 481 U.S. 129, 134-135 (1987).

In limited circumstances, a court may "stay" a habeas petition to avoid limitations period problems. The enactment of the AEDPA altered the landscape of federal habeas law by imposing a one-year statute of limitations on the filing of federal petitions while preserving the total exhaustion requirement. See 28 U.S.C. § 2244(d). Under the AEDPA, the filing of a habeas petition in federal court does not toll the statute of limitations. See *Duncan v. Walker*, 533 U.S. 167, 181-82 (2001). As a result, habeas petitioners who file mixed petitions in federal courts run the risk of losing their opportunity for any review of their unexhausted claims. *Rhines v. Weber*, 544 U.S. 269, 277 (2005). In an attempt to solve this problem, some district courts have adopted a stay and abeyance procedure. *Id.* at 275. The stay and abeyance procedure should be used in "appropriate but limited circumstances." *Dolis v. Chambers*, 454 F.3d 721, 724 (7th Cir. 2006). The Seventh Circuit has cautioned that a federal district court may only stay a mixed petition "if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentional dilatory litigation tactics." *Id.* at 278.

The procedural default doctrine, also grounded in principles of comity, federalism, and judicial efficiency, ordinarily precludes a federal court from reaching the merits of a habeas claim when either (1) the claim that was presented to the state courts and the state-court ruling against the petitioner rests on adequate and independent state law grounds, or (2) the claim was

not presented to the state courts and it is clear that those courts would now hold the claim procedurally barred. *Id.*; see also *Coleman*, 501 U.S. at 735; *Harris v. Reed*, 489 U.S. 255, 263 & n.9 (1989); *Conner v. McBride*, 375 F.3d 643, 648 (7th Cir. 2004). Thus, when a habeas petitioner has "exhausted his state court remedies without properly asserting his federal claim at each level of the state court review"—and the opportunity to raise that claim in state court has passed—the petitioner has procedurally defaulted that claim. *Lewis*, 390 F.3d at 1026.

Independent and adequate state grounds exist, and federal review of a petitioner's habeas claim therefore is foreclosed, when "the last state court to issue an opinion on a petitioner's federal claim has resolved that claim on an adequate and independent state ground." *Miranda v. Leibach*, 394 F.3d 984, 991 (7th Cir. 2005). "Typically this occurs when the petitioner failed to comply with a state procedural rule and the state court relied on that procedural default to refrain from reaching the merits of the federal claim." *Id.* at 991-92; see also *Coleman*, 501 U.S. at 729-30. To preclude federal review, the state law grounds must be independent of the federal question and adequate to support the judgment. See *Coleman*, 501 U.S. at 279. Adequacy requires that "a state's procedural rule [ ] be proclaimed in advance and regularly followed." *Szabo v. Walls*, 313 F.3d 392, 395-96 (7th Cir. 2002).

Once a court has determined that a petitioner has procedurally defaulted one or more habeas claims, the default can be overcome only if the petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law" or, alternatively, show that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. Under the cause and prejudice test, "cause for a default is ordinarily established by showing that some type of external impediment prevented the petitioner from presenting his federal claim to the state courts." *Lewis*, 390 F. 2d at 1026 (citing *Murray v.*

*Carrier*, 477 U.S. 478, 488 (1986)). Prejudice is established by showing that the violation of the petitioner's federal rights created "not merely * * * a *possibility* of prejudice, but that [it] worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Lewis*, 390 F.3d at 1026 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)); see also *Lemons v. O'Sullivan*, 54 F. 3d 357, 362 (7th Cir. 1995). A federal court may grant a procedurally defaulted habeas petition even in absence of cause in extraordinary cases where "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 466 U.S. at 496. In order to establish that a fundamental miscarriage of justice would result if habeas relief is denied, the petitioner must show that "no reasonable juror would have found him guilty of the crime but for the error(s) he attributes to the state court." *Lewis*, 390 F.3d at 1026 (quoting *Schlup v. Delo*, 513 U.S. 298, 327-29 (1995)).

## III.    Analysis

### A.    Procedurally Defaulted Claims

Before discussing issues of procedural default as to particular claims, the Court must determine whether any corrective processes remain available to remedy any of Petitioner's potential defaults under Illinois law. Because Petitioner already pursued certain of his claims in two rounds of post-conviction proceedings, in order to return to the Illinois courts for consideration of any unexhausted claims Petitioner would be required to file a third petition for post-conviction relief, which would require leave of court. See 725 ILCS § 5/122-1(f) ("One petition may be filed by a petitioner * * * without leave of court"). Leave of court to file a successive post-conviction petition with an additional claim or claims is granted "only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure." *Id.* Illinois law specifies the

following regarding the cause and prejudice standard: "(1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." *Id.* Moreover, a separate provision in the Illinois post-conviction act provides that "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." 725 ILCS § 5/122-3. The disposition of an initial post-conviction petition thus has preclusive effect with respect to all claims that *were raised or could have been raised* in that petition. See *People v. McDonald*, 365 Ill. App. 3d 390, 392-393 (3d Dist. 2006) (emphasis added).

The Court does not believe that Petitioner could overcome the preclusive effect of his direct appeal and *two* post-conviction petitions in state court. Petitioner is not, for example, raising a new constitutional claim such as ineffective assistance of appellate counsel that has arisen since his post-conviction proceedings and could be appropriately disposed of in a successive petition. The Illinois courts likely would find that Petitioner waived his right to bring any additional claims. *Id.*

However, any consideration of how the Illinois courts might have treated Petitioner's unexhausted claims is unnecessary for this Court's review, because it is the statute of limitations that is fatal to Petitioner's ability to return to state court for further proceedings. Illinois's post-conviction act specifies that if a petition for certiorari to the United States Supreme Court is not filed on direct appeal, "no proceedings under this [statute] shall be commenced . . . more than 6 months from the date for filing a certiorari petition, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence." 725 ILCS § 5/122-1(c). The six-

month limitations period lapsed long ago, and Petitioner has not pointed to "facts showing that the delay" in raising new allegations with respect to these three claims "was not due to his [] culpable negligence." *Id.* Petitioner is therefore barred from further proceedings on limitations grounds in the Illinois courts.

Petitioner's first four claims allege errors in the trial court proceedings. Because "the remedial power of a federal habeas court is limited to violations of a petitioner's federal rights," a state court's evidentiary and instructional errors are beyond the scope of federal habeas review. *Perruquet v Briley*, 390 F.3d 505, 511 (7th Cir. 2004). However, where a petitioner's habeas claim draws enough of a connection between the trial court's alleged error and his right to due process, the claim may be cognizable under the Fourteenth Amendment right to a fair trial. *Id.*

Petitioner's first due process claim, that the trial court erred when it refused to tender jury instructions on second degree murder, is procedurally defaulted because he failed to fairly present the federal claim in state court. A petitioner does not "fairly present" a federal claim to a state court if that court must read beyond a petition, a brief, or "a similar document" to find material that will alert it to the existence of such a claim. *Baldwin v. Reese*, 541 U.S. 27, 31 (2004). In his habeas petition, Cebertowicz argues that his constitutional right to due process of law was violated by the alleged error of the trial court. However, in his direct appeal Cebertowicz failed to raise the constitutional issue, arguing only that the trial court had erred because there was sufficient evidence to mandate the second degree murder instruction. Although a habeas petitioner is given some leeway in reformulating his or her arguments in terms of "fair presentment" so long as the "substance" of the federal claim(s) remains the same, that leeway is "much more limited" in the due process context than in other constitutional contexts. *Kurzawa v. Jordan*, 146 F.3d 435, 443 (7th Cir. 1998). Thus, because petitioner raises

this federal claim for the first time in the present habeas petition, the state court was deprived of the opportunity to decide the claim, and he cannot return to state court, he has procedurally defaulted that claim.

Petitioner's remaining due process claims - the second, third, and fourth claims in this petition - are procedurally defaulted because he failed to raise those issues in his PLA following his direct appeal to the Illinois Supreme Court and he cannot return to state court. As discussed above, issues not presented through an entire round of appellate review are procedurally defaulted and barred from review in a federal habeas court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). Petitioner asserts neither cause and prejudice nor miscarriage of justice to overcome this default.

Petitioner's fifth claim is procedurally defaulted for the same reason as his first claim. In his fifth claim, Petitioner asserts that he was denied effective assistance of trial and appellate counsel and subjected to double jeopardy when the trial court imposed consecutive sentences for his conviction. Respondent takes the position that Petitioner's post-conviction petition did not include a claim that he was subject to double jeopardy and therefore this claim should be procedurally defaulted. That argument presents a close call. Ground one of Petitioner's post-conviction petition states that he was "denied effective assistance of trial and appellate counsel and subjected to double jeopardy * * * when trial court imposed consecutive sentences on petitioner." Ex. R at 2. At first glance, that statement would appear to foreclose any argument of default. However, as discussed above, strict compliance with the presentation requirement is mandated. In other words, the petitioner must include both the operative facts and controlling legal principles of his claim and also must alert the state court that the claim is based on federal law. Here, while Cebertowicz certainly refers to the double jeopardy clause in his post-

conviction petition, his argument is predicated on, and the state court clearly resolved the issue on, state grounds under the "one-act, one-crime" theory[5]. See *United States ex rel. Mills v. Uchtman*, 2006 WL 695689 (N.D. Ill Mar. 14, 2006) (petitioner failed to cite controlling legal principle of federal claim although he titled it as a Sixth Amendment issue in state court). It is not clear that the state courts were given a meaningful opportunity to consider the federal substance of the claim.

Petitioner now states that the state courts "chose to ignore this issue." But the state court's analysis tracked Petitioner's presentation of the issue. Petitioner cited only one case in his post-conviction petition, *People v. Lee*, 311 Ill. App. 3d 363 (4th Dist. 2000). At no point in that decision are double jeopardy or federal law referenced; instead the decision focuses on the "one-act, one-crime" issue under state law. It was on that basis that the state court rejected the petition. Because Petitioner raises this *federal* claim for the first time in the present habeas petition, the state court lacked an opportunity to decide the issue, and Petitioner has procedurally defaulted that claim.[6]

---

[5] See *People v. Crespo*, 203 Ill.2d 335 (2001); *People v. Lee*, 213 Ill.2d 218 (2004).

[6] Even if Petitioner had not defaulted this claim, it would fail on the merits because Petitioner's separate sentence for aggravated discharge did not violate double jeopardy and appellate counsel's decision not to appeal did not rise to the *Strickland* standard (discussed in more depth below). The only potentially applicable guarantee under the Double Jeopardy Clause of the Fifth Amendment is that an individual shall not be punished twice for the same offense. See, *e.g.*, *Illinois v. Vitale*, 447 U.S. 410, 415 (1980). It is implicit in the Circuit Court's findings of fact and law that the felony murder conviction essentially dropped out when the two murder convictions merged. See Ex. U at 616-617. This appears consistent with state policy - when a defendant is convicted on multiple theories of first degree murder for a single murder, the sentence is imposed on the most serious offense. See *Mack v. McCann*, 530 F.3d 523, 534 (7th Cir. 2008) (citing *People v. Mack*, 105 Ill.2d 103 (1984)). In this case, the sentence was therefore imposed on the knowing murder (which was unattached to the aggravated discharge) not the felony murder. See *Mack*, 105 Ill.2d 103. The aggravated discharge sentence was given for a separate offense (the shot fired into the wall) and thus not objectionable under the double jeopardy clause. The decision not to appeal the separate sentences (disregarding the consecutive sentence problem which has been remedied) when there is no evidence the sentences violated clearly established federal double jeopardy law does not reach the *Strickland* standard of ineffective assistance of appellate counsel. Finally,

Petitioner's fourteenth claim is that he was denied the effective assistance of trial and appellate counsel because of the cumulative effect of all the errors at the trial. The state trial court found this claim to be merely a "conclusory allegation" that failed to "clearly set forth the respects in which petitioner's constitutional rights were violated" as required by the Illinois Post-Conviction Hearing Act (725 ILCS § 5/122-2). Ex. U at 622. As stated above, federal review of a habeas claim is foreclosed when "the last state court to issue an opinion on a petitioner's federal claim has resolved that claim on an adequate and independent state ground." *Miranda v. Leibach*, 394 F.3d 984, 991 (7th Cir. 2005). "Typically this occurs when the petitioner failed to comply with a state procedural rule and the state court relied on that procedural default to refrain from reaching the merits of the federal claim." *Id.* at 991-92; see also *Coleman v. Thompson*, 501 U.S. 722, 729-730 (1991). The trial court denied the claim because petitioner failed to comply with a state rule. Petitioner has demonstrated neither cause and prejudice, nor fundamental miscarriage of justice to excuse his default. Thus, Petitioner's fourteenth claim is procedurally defaulted and beyond the reach of federal review. Moreover, because the Court has denied Petitioner's individual claims of error, there can be no cumulative error.

Because the limitations period has passed and Petitioner is barred from further proceedings in the Illinois courts, "state corrective action" no longer exists and Petitioner has procedurally defaulted his first, second, third, fourth, fifth, and fourteenth habeas claims. See *Perruquet*, 390 F.3d at 513. In this instance, Petitioner has neither attempted to make a showing of cause and prejudice that might overcome his procedural defaults, nor invoked the "fundamental miscarriage of justice" exception. See *Coleman*, 501 U.S. at 750; *Lewis v. Sternes*,

---

Petitioner appears to concede that he is not prejudiced by the concurrent sentence in stating "[t]his may be a pyrrhic victory." [24] at 4.

390 F.3d 1019, 1026 (7th Cir. 2004). The Court will not make those arguments for Petitioner. See *Todd v. Schomig*, 283 F.3d 842, 849 (7th Cir. 2002).

**B.      Ineffective Assistance of Counsel Claims**

Petitioner's remaining nine claims allege constitutionally ineffective assistance of trial and appellate counsel. To prevail on a claim of ineffective assistance of counsel, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Additionally, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* Under the *Strickland* standard, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690.

Petitioner's sixth claim is that he was denied effective assistance of trial and appellate counsel and subject to double jeopardy when the trial court failed to vacate one of his two murder convictions. Petitioner was convicted of the first degree murder of Vicki Cebertowicz under two different theories, 720 ILCS 5/9-1(a)(1) and 720 ILCS 5/9-1(a)(3). However, only one judgment of conviction for first degree murder was entered against him. Ex. U at 618. Petitioner's trial counsel in fact attempted to have one of the first degree murder convictions vacated. The Court stated, "I'm going to order that the judgment as to Count 2, the felony murder count which was also for first degree murder, is merged into the finding of guilty and the judgment entered as to Count 1, so that only one judgment of conviction for first degree murder is entered against the defendant." Ex. Q at 443. As the Circuit Court pointed out in rejecting Petitioner's amended second petition for post-conviction relief, the merger reflects proper practice in Illinois. See Ex. U at 617 (citing *People v. Redmond*, 265 Ill. App. 3d 292 (1st Dist.

1994)). There is no indication that Petitioner was sentenced separately on the two counts. Petitioner's appellate counsel's failure to object to this standard procedure in a criminal trial is not improper, and therefore could not rise to the level of ineffective assistance of counsel under *Strickland*. Additionally, there is no prejudice to Petitioner in that only one judgment of first degree murder was entered. Cebertowicz is therefore unable to show with any that raising this issue would have resulted in a different outcome. Petitioner's sixth claim is therefore denied.

In his seventh claim, petitioner asserts that he was denied the effective assistance of trial and appellate counsel because the Illinois second degree murder statute is unconstitutionally vague. As the trial court noted, the second degree murder statute has survived constitutional challenges. *People v. De Oca*, 238 Ill. 3d 362 (1st Dist. 1992) (no due process violation), *People v. Willis*, 217 Ill. 3d 909 (1st Dist. 1991) (no equal protection violation). Ex. U at 618. The Seventh Circuit has also upheld the constitutionality of the second degree murder statute. *Mason v. Gramley*, 9 F.3d 1345 (7th Cir. 1993) (overruled on other grounds); *Hogan v. McBride*, 74 F.3d 144 (7th Cir. 1996). Neither trial nor appellate counsel is responsible for determining the legal status of Illinois statutes, so even if the statute were found unconstitutional, it would not be the fault of counsel. Petitioner's claim therefore is without merit. Furthermore, even if petitioner here intends to assert a claim of ineffective assistance of trial and appellate counsel for failing to raise a claim challenging the constitutionality of the second degree murder statute, that would fail as well. Petitioner cannot show that counsel's actions "fell below an objective standard of reasonableness" when he failed to bring a long shot claim on appeal. A lawyer has "no duty, indeed no right, to pester a court with frivolous arguments * * * that cannot conceivably persuade the court." *U.S. v. Edwards*, 777 F.2d 364, 365 (7th Cir. 1985). In any

event, Petitioner has made no showing that but for his attorneys' alleged error the result of the proceedings would have been different. Thus, Petitioner's seventh claim is rejected.

Petitioner's eighth claim is that he was denied the effective assistance of trial and appellate counsel because trial counsel failed to provide a recognized defense and appellate counsel failed to raise the issue on direct appeal. At trial, counsel argued that the murder was committed under sudden and intense passion predicated upon verbal admission to adultery, which is not a recognized defense. In its decision granting the State's motion to dismiss the second amended post-conviction proceedings the circuit court said:

> In his opening statement, attorney Polito carefully phrased his address to the jury, stating that they would find that what occurred was not first degree murder. R. 980-985. He neither stated that it was manslaughter, nor that it was second degree murder. This was the most intelligent thing he could have done, given his hope, but the unlikelihood, of a second degree instruction. Moreover, the decision to admit in the opening that petitioner killed his wife was a normal strategic conduct, designed to enhance the lawyer's credibility with the jury. Given the strength of the evidence, this was probably his most intelligent choice. These were certainly sound decisions, and decisions which were properly the lawyer's to make. *People v. Ramey*, 152 Ill. App. 2d 41 (1992) (trial counsel has the right to make ultimate decisions with respect to strategy and tactics)).

Ex. U at 618.

Under the *Strickland* test, review of counsel's performance is highly deferential. *See Stevens v. McBride*, 489 F.3d 883, 890 (7th Cir. 2007). Petitioner must also "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (citing *Strickland*, 466 U.S. at 680). For the reasons described above, the Circuit Court concluded that petitioner did not overcome this presumption. Petitioner has not indicated how the trial court's determination was "contrary to" or employed an "unreasonable application of" Supreme Court precedent or was premised on an unreasonable determination of the facts. Petitioner provides no basis which would satisfy either prong of the *Strickland* test. The Court

denies petitioner's ineffective assistance of counsel claim for trial counsel's failure to provide a recognized defense and appellate counsel's failure to raise the ineffective assistance of trial counsel on direct appeal.

Petitioner's ninth claim is that he was denied the effective assistance of trial and appellate counsel because trial counsel failed to discuss with him the desirability of accepting the State's thirty year plea offer and gave petitioner erroneous advice that his case was second degree murder, and that appellate counsel failed to raise the issue on appeal. The trial court rejected this argument after the evidentiary hearing, finding that:

> It is well settled that the decision whether to accept or reject a proposed plea negotiation is ultimately that of the client. *People v. Ramey*, 152 Ill. 2d 41 (1992). The [petitioner] was informed of the twenty to sixty year range of imprisonment he was likely facing. He was informed that second degree murder was an unlikely result. … [T]he fully informed [petitioner] chose to go to trial. […] In conclusion, [petitioner] was not mislead [*sic*] by his attorney to his prejudice, which he must demonstrate to prevail on this issue. *People v. Curry*, 178 Ill. 2d 509 (1997).

Ex. U at 619-20. The trial court also found that petitioner wrote a letter to Mr. Polito after he was imprisoned, which stated "I know you did everything you could to get me out of this mess and I want to thank you for that." Ex. U at 620. The trial court further determined that "the testimony of attorney Polito [is] credible and well-documented" and that of petitioner is "not credible". Ex. U at 616. Petitioner has not demonstrated that Polito's performance as counsel was so deficient that he was not functioning at the level guaranteed by the Sixth Amendment or that there was an error so serious that it deprived him of a fair trial. Because petitioner has not satisfied either prong of the *Strickland* test – much less both prongs – his claims of ineffective assistance of trial counsel for failure to advise Petitioner to take the State's plea offer, and ineffective assistance of appellate counsel for failure to raise the issue on appeal, are denied.

Petitioner's tenth claim is that he was denied effective assistance of trial and appellate counsel where the trial court failed to suppress petitioner's pre-trial statement, and appellate counsel failed to raise the issue on direct appeal. The trial court found the following after its evidentiary hearing during petitioner's second amended post-conviction proceedings:

> Prior to his client testifying, Attorney Polito moved to suppress defendant's brief statement that he was cleaning his gun at the time to Officer Maas. R. 877-880. The People had not introduced this statement during their case in chief, but wished to use it as potential impeachment of defendant. The trial court ruled that the statement could be used as impeachment. […] [T]he statement was admissible as impeachment under *Harris v. New York*, 401 U.S. 222 (1971). Illinois follows this legal position. *People v. Lawson*, 327 Ill. App. 3d 60 (1st Dist. 2001), *appeal denied* 198 Ill. 2d 625 (2002).

Ex. U at 620-21. Trial counsel is not constitutionally ineffective based on the lawful inclusion of evidence by the trial court. Petitioner has provided no evidence to show that counsel's representation fell below an objective standard of reasonableness, nor has he shown that there is a reasonable probability that but for counsel's alleged error, the trial court would have ruled differently. Because Petitioner has failed to demonstrate both prongs of the *Strickland* test, his claim of ineffective assistance of trial and appellate counsel based on the lawful inclusion of evidence at trial is denied. Furthermore, since attorney Polito was not ineffective in his representation of petitioner at trial, appellate counsel was not constitutionally ineffective for failing to raise a claim of ineffective assistance of trial counsel on appeal.

In his eleventh claim, Petitioner contends that he was denied effective assistance of trial and appellate counsel because the prosecutor engaged in misconduct by showing a prejudicial picture to the jury and the trial attorney did not object and that appellate counsel did not argue ineffective assistance of trial counsel on direct appeal. The trial court made the following finding during its evidentiary hearing:

There is inadequate evidence before this Court that any improper display of a photograph of a child holding a gun occurred at this trial. There is no such photograph either in the record or in evidence from the evidentiary hearing. Apart from defendant's testimony at the hearing, there is no record of such a display at the trial. Neither Attorney Polito nor former First Assistant State's Attorney Doug DeBoer knows what defendant is referring to. There is no statement from any juror that such photograph was seen, or that their verdict was affected, by any such photograph. The defense has not shown a substantial deprivation of a constitutional right.

Ex. U at 621. Because the trial court determined, based on a post-conviction evidentiary hearing, that the photograph to which Petitioner refers to does not exist, Petitioner cannot demonstrate that trial counsel's failure to object to such a photograph was in any way deficient. And because petitioner has not satisfied both prongs of the *Strickland* test, he cannot prevail on his ineffective assistance of counsel claim for trial counsel's failure to object to prosecutorial misconduct during the trial. Furthermore, because there was no attorney error, appellate counsel was not constitutionally ineffective for failing to raise a claim of ineffective assistance of trial counsel claim on appeal.

In his twelfth claim, petitioner asserts that he was denied the effective assistance of trial and appellate counsel when his trial and appellate counsel failed to challenge the constitutionality of the first degree murder statute as confusing and vague. Statutes are presumed constitutional, and the party challenging the validity of a statute has the burden of clearly establishing that it is unconstitutional. *People v. Masterson*, 207 Ill. 2d 305 (2003). As the trial court pointed out, the Illinois first degree murder statute has withstood constitutional challenges based on due process, equal protection, and separation of powers grounds. *People v. Banks*, 227 Ill. App. 3d 462 (1st Dist. 1992). Ex. U at 621. Also, as stated before, under the *Strickland* standard "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S.

at 690.  Petitioner cannot rebut these presumptions, and therefore cannot show that either trial or appellate counsel's decision not to challenge the constitutionality of the first degree murder statute "fell below an objective standard of reasonableness" as required by the *Strickland* test. (See also discussion of claim seven regarding frivolous claims on appeal.)  Moreover, petitioner has made no showing that but for his attorneys' alleged error, the result of the proceedings would have been different.  Thus, his claim of ineffective assistance of counsel is without merit.

Petitioner's thirteenth claim is that he was denied the effective assistance of trial and appellate counsel because the trial court relied upon evidence during Petitioner's sentencing hearing that was not charged in the indictment or proved beyond a reasonable doubt at trial, and that both trial and appellate counsel failed to raise the issue.  Petitioner specifically argues that the court erred by relying on the phrase "accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty," which he asserts was improper because "it was not a factor to consider under aggravating factors."  At the evidentiary hearing, the court found that: "[t]he trial court did not rely on any improper factor in imposing [petitioner's] sentence.  […] A sentencing court may base its sentence on factors other than those listed in the Unified Code of Corrections so long as the factors are consistent with the Code."  *People v. Bohlander*, 225 Ill. App. 3d 1055 (3d Dist. 1992).  Ex. U at 622.  Because there was no error in Petitioner's sentencing, trial and appellate counsel were not constitutionally ineffective for failing to raise a claim of sentencing error on appeal.  Moreover, Petitioner cannot satisfy either prong of the *Strickland* test, so his ineffective assistance of counsel claim for failure to raise a claim of improper sentencing procedure on appeal fails.

Petitioner's final claim is that he was denied the effective assistance of appellate counsel when counsel told him to raise only one issue in his direct PLA to the Illinois Supreme Court,

thus barring Petitioner from raising other issues in federal court – including claims two, three, and four in this petition. The trial court found that the Petitioner "has not demonstrated that he was likely to prevail in a higher tribunal on [claims two, three and four] which he lost on in his initial appeal". Ex. U at 622. As previously discussed, appellate counsel is not constitutionally deficient for failing to assert claims that are highly unlikely to succeed. In addition, as Respondent points out, there is no constitutional right to competent counsel to pursue discretionary state appeals, such as a PLA to the Illinois Supreme Court. *Buelow v. Dickey*, 847 F.2d 420, 426 (7th Cir. 1988) (citing *Ross v. Moffitt*, 417 U.S. 600 (1974)). In the absence of a constitutionally guaranteed right to competent counsel for the appeal in question, a claim of constitutionally ineffective assistance of appellate counsel cannot prevail. Petitioner's claim therefore is without merit.

**IV.     Conclusion**

For the reasons stated above, the Court denies Cebertowicz's petition for writ of habeas corpus [1, 11].

Dated:   January 30, 2009        _____
                                 Robert M. Dow, Jr.
                                 United States District Judge